BLECHER & COLLINS, P.C.
Maxwell M. Blecher (State Bar No. 26202)
  *mblecher@blechercollins.com*
Ralph C. Hofer (State Bar No. 86083)
  *rhofer@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff MUSEUM ASSOCIATES
dba LOS ANGELES COUNTY MUSEUM OF ART,
a California Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

CV08-07304 DSF (CWx)

| | |
|---|---|
| MUSEUM ASSOCIATES, dba LOS ANGELES COUNTY MUSEUM OF ART, a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> FINANCIAL GUARANTY INSURANCE COMPANY, a New York Corporation, and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR DAMAGES AND RESTITUTION <br><br> 1. FRAUD <br> 2. NEGLIGENT MISREPRESENTATION <br> 3. BREACH OF CONTRACT <br> 4. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING <br> 5. UNFAIR COMPETITION: BUS. & PROF. CODE SECTION 17200 <br><br> [DEMAND FOR JURY TRIAL] |

given
dismissal
of Does

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    The above-named plaintiff, demanding a trial by jury, by and through its
2  attorneys, file this Complaint ("the Complaint") , against the above-named
3  defendant and complains and alleges as follows:

### THE PARTIES

**A.    The Plaintiff**

6    1.    Plaintiff Museum Associates, doing business as the Los Angeles
7  County Museum of Art (hereinafter referred to as "LACMA," "Plaintiff," or "the
8  Museum") is, and at all time relevant herein was, a non-profit public benefit
9  corporation incorporated in the State of California and doing business in the State
10 of California, County of Los Angeles.  At all times relevant herein LACMA had,
11 and still has, continuous business operations in the state of California, County of
12 Los Angeles and has its principal place of business in the City of Los Angeles,
13 County of Los Angeles.  LACMA is a citizen of, and is headquartered in, the City
14 of Los Angeles, State of California.

**B.    The Defendants**

16   2.    Defendant Financial Guaranty Insurance Company (hereinafter
17 referred to as "Defendant" or "FGIC") is, and at all times relevant herein was, a
18 New York stock insurance corporation incorporated in the State of New York.
19 FGIC previously was engaged in the business of issuing financial guaranty
20 insurance policies and surety bonds with respect to public finance, structured
21 finance, and other fixed income obligations, including issuing insurance policies
22 for municipal bonds.  FGIC is licensed to engage in the financial guaranty
23 insurance business in all 50 states, including the State of California.  FGIC does
24 business in California as FGIC Insurance Company.  FGIC had, and still has,
25 continuous business operations on the State of California, including the County of
26 Los Angeles.  FGIC is a citizen of, and is headquartered in, the City of New York,
27 State of New York.

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

3.      Plaintiff is unaware of the true names and capacities, whether individual, associate, corporate, or otherwise, of Defendants Does 1 through 50, inclusive, and therefore sues such Defendants, and each of them, by fictitious names. Plaintiff is informed, and believes, and thereon alleges, that each of the Defendants sued herein as Does 1 through 50 participated in, and/or is responsible for, conduct alleged herein resulting in injury and damage claimed by Plaintiff in this action. FGIC and Does 1 through 50 are sometimes collectively referred to as "the Defendants."

4.      Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, FGIC, on the one hand, and the respective Doe Defendants, on the other hand, were the agents, representatives, and employees of each other, and each of the respective defendants, including Does 1 through 50, were acting within the course, purpose, and scope of said respective agencies, representations, and employments.

## THE NATURE OF THE ACTION

5.      The Complaint is a claim by LACMA, a California public benefit non-profit corporation, on whose behalf, and for its benefit, $200 million of municipal bonds were issued November 2007 for the construction of new facilities for the expansion and modernization of the Museum. FGIC is a monoline insurer whose primary business was the issuance of insurance policies for municipal bonds. The policies provide insurance for the investors that the principal and interest on the municipal bonds will be paid in the event that LACMA does not pay the interest or principal in a timely fashion or otherwise defaults on any payments.

6.      Insurance policies with a Triple A rating such as the one FGIC issued for LACMA in connection with the issuance and sale of LACMA's November 2007 municipal bonds are necessary for the initial sale of the bonds and on-going liquidity once the bonds have been sold because investors, sometimes hereinafter

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  referred to as "the Bondholders," ordinarily will not buy the bonds without Triple
2  A rated insurance.  The insurance must have a Triple A rating to satisfy the
3  Bondholders or it normally serves no commercial purpose.  The insurance is
4  commercially necessary in part to support the variable rate of indebtedness of the
5  bonds and to prevent the extreme escalation of interest rates on the bonds.

6       7.     The value of the insurance under scrutiny in this case is dependent on
7  FGIC maintaining a Triple A rating with the bond credit rating agencies such as
8  Fitch Ratings Agency ("Fitch"), Standard & Poors Rating Agency ("S & P") and
9  Moody's Rating Agency ("Moody's").  FGIC represented itself as a Triple A rated
10  municipal bond insurance company and represented that it would maintain its
11  Triple A rating.  The Triple A rating of a bond insurance company such as FGIC
12  was necessary to maintain the marketability and economic viability of LACMA's
13  municipal bonds.  LACMA would not have purchased an insurance policy for its
14  bonds from other than an insurer which maintained a Triple A rating.

15       8.     On November 5, 2007, shortly before LACMA's $200 million bond
16  issuance was set to close on November 9, 2007, Fitch announced that it was in the
17  process of reviewing the credit standings of municipal bond insurance companies,
18  including FGIC.  Fitch stated at that time that its review would likely result in a
19  ratings down grade from Triple A unless the companies took the appropriate
20  remedial measures.  On November 6 and 7, 2007 LACMA sought and received
21  from FGIC assurances orally and in writing that it would take the steps necessary
22  to maintain its Triple A rating.  At same time FGIC threatened to increase its
23  premium by $2.0 million if LACMA did not close the bond deal by November 15,
24  2007.  Based on these threats and misrepresentations, LACMA went forward with
25  the transaction and paid FGIC a premium of nearly $6.75 million for bond
26  insurance.

27       9.     By the middle of December 2007, Fitch placed FGIC on credit watch
28  and gave FGIC thirty (30) days to improve its financial strength so it could

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  maintain its Triple A rating.  Approximately thirty (30) days later, Fitch

2  downgraded FGIC's credit rating to a level below Triple A, thereby rendering

3  FGIC's bond insurance policy worthless for the purpose of issuing and

4  maintaining the liquidity of the LACMA bonds.  In this action, LACMA seeks to

5  recover its premium payment to FGIC of approximately $6.75 million and all

6  reasonably foreseeable consequential damages arising out of FGIC's failure to

7  maintain its Triple A rating as promised.  Such damages are not less than $10

8  million and could be as much as $32 million.

9  **JURISDICTION AND VENUE**

10  **A.    Jurisdiction**

11      10.    At all times relevant hereto, FGIC was licensed to sell and provide

12  bond insurance in the State of California.  Therefore, FGIC had, at all times

13  pertinent hereto, a continuous and on going business presence in the State of

14  California and a presence in the state of California with regard to the municipal

15  bond insurance policy FGIC sold to LACMA in 2007.

16      11.    The fraudulent misrepresentations and omissions, the breaches of

17  contract, and other wrongful acts by the Defendant alleged herein arising from

18  FGIC's failure to maintain a Triple A rating with the bond credit rating agencies,

19  occurred in the State of California in that executives and employees traveled to,

20  and appeared in, Los Angeles in connection with FGIC's sale of bond insurance to

21  LACMA for the $200 million worth of municipal bonds issued in November 2007.

22  In addition, such fraudulent misrepresentations and omissions, the breaches of

23  contract, and other wrongful acts by the Defendant  were directed to the State of

24  California from out of state by way of communications by telephone and in

25  writing made from out of state with the intention that such acts and omissions have

26  an impact in the State of California.  Such acts and omissions did in fact have an

27  impact on the Plaintiff in the State of California within Los Angeles and within the

28  Central District for the United States District Court in California.  Personal

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  jurisdiction exists over all the Defendants pursuant to California Code of Civil
2  Procedure Section 410.10.

3        **B.**    **Subject Matter Jurisdiction**

4       12.    Subject matter jurisdiction is based on 28 U.S.C. Section 1332 due to
5  the existence of diversity of citizenship. The Plaintiff and the Defendant are
6  citizens of different states, thereby generating diversity of citizenship, and the
7  amount in controversy exceeds $75,000.

8        **C.**    **Venue**

9       13.    Venue is appropriate in the Central District of California pursuant to
10 28 U.S.C. Section 1391(a) because a substantial part of the events and omissions
11 giving rise to the Plaintiff's claims arose in the Central District of the United
12 States District Court for the State of California. The breaches of contract and the
13 tort injuries all occurred within the State of California such that venue exists in the
14 Central District of the United States District Court located in the City of Los
15 Angeles.

16      14.    In addition, LACMA's injuries and damages from FGIC's
17 misrepresentations and failure to provide viable municipal bond insurance for
18 LACMA's $200 million bond offering of November 2007 occurred in the Central
19 District. Pursuant to 28 U.S.C. Section 1391(a), venue is proper in the Central
20 District because a substantial part of the acts alleged in this Complaint giving rise
21 to the Plaintiff's claims occurred in, were directed from, and/or had effects in, the
22 Central District.

23     **ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

24     **A.**    **The Issuance of the 2007 Bonds**

25      15.    On November 9, 2007, California Statewide Communities
26 Development Authority ("the Issuer" or "CSCDA") issued $200 million in
27 aggregate principal amount of bonds on behalf of LACMA for the new
28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  construction and modernization of the Museum.  These bonds sometimes
2  hereinafter will be referred to as "the 2007 Bonds."

3      16.    LACMA contracted for FGIC to provide a Triple A municipal bond
4  insurance policy for the issuance of the 2007 Bonds.  Based on FGIC's
5  representation that it would retain its Triple A rating, LACMA paid FGIC a
6  premium of approximately $6.75 million for the insurance policy for these bonds.
7  FGIC's furnishing the Triple A rating in connection with its issuance of its
8  municipal bond insurance policy was essential for LACMA to sell these bonds in
9  the capital markets to the Bondholders because the bonds bore a variable rate of
10  interest.  FGIC's municipal bond insurance guaranteed the timely payment of the
11  scheduled principal and interest payments on the 2007 Bonds.

12      17.    Citigroup Global Markets, Inc. ("Citigroup") served as the
13  underwriter for the 2007 Bonds.  As the underwriter, Citigroup sold the 2007
14  Bonds in the capital markets for a fee and assumed the obligation of purchasing
15  the Bonds on the open market in the event they did not sell in the initial offering.

16      18.    After months of preparation and presentations from Citigroup, FGIC
17  and other financial entities, the full Board of LACMA on October 3, 2007
18  approved the construction of the Museum's modernization program and
19  authorized the issuance of the 2007 Bonds.  LACMA authorized moving forward
20  with its financial services entities to implement all the steps necessary to market
21  the 2007 Bonds.

22      19.    By about August 2007, FGIC had quoted LACMA a premium of
23  nearly $6.75 million for the municipal bond insurance policy FGIC would issue to
24  guaranty for the Bondholders the payment of principal and interest on the 2007
25  Bonds.  FGIC set an expiration date of November 1, 2007 for this premium quote.
26  In September 2007, LACMA asked FGIC to extend the deadline for $6.75 million
27  quote to December 1, 2007 to allow LACMA more time to assemble the financial
28  transaction that would result in the issuance of the 2007 Bonds.  In anticipation

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   that its Triple A rating would be reduced and in dire need of a cash infusion to

2   cover its losses, FGIC would only extend the deadline for the quote until

3   November 15, 2007. Also, FGIC told LACMA that if the 2007 Bond transaction

4   did not close by November 15, 2007, FGIC would charge an additional $2.0

5   million for the premium.

6        **B.**    **Municipal Bond Rating Agency Review of FGIC's Triple A**

7           **Rating**

8       20.    On November 5, 2007, Fitch, a leading national municipal bonds

9   rating agency, issued a press release concerning the process it would be employing

10  over the next few weeks in updating its analysis of the collaterized debt

11  obligations of asset backed securities ("ABS CDOs") insured by the financial

12  guaranty industry, including in particular mortgage backed securities. Fitch stated

13  in the November 5, 2007 press release that its review of the financial positions of

14  municipal bond insurance companies could have implications for its financial

15  strength ratings of the current Triple A rating of municipal bond insurers such as

16  FGIC.

17      21.    Fitch in its November 5, 2007 press release indicated that it was

18  updating its capital adequacy analysis in light of recent rating actions with respect

19  to ABS CDOs which had a sub prime mortgage-backed securities exposure. Fitch

20  also disclosed its preliminary observations on the likelihood that each currently

21  rated Triple A municipal bond insurance company, including FGIC, may

22  experience some erosion of their capital cushions under Fitch's updated financial

23  stress analysis and noted that FGIC would have a "high probability" of

24  experiencing erosion of its capital position.

25      22.    Fitch in its November 5, 2007 press release outlined the procedure

26  and methodology it would employ in the process of the ratings review of FGIC

27  and the other municipal bond insurance companies. Fitch noted that it would be

28  willing to consider during the review process the impact of actions taken by the

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  municipal bond insurance company to mitigate its risk and exposure to mortgage

2  backed securities or to enhance its capital.

3       23.    Fitch stated that, at the conclusion of its updated stress analysis, it

4  would expect to place on "Rating Watch Negative" the financial strength rating of

5  any municipal bond insurance company whose capital ratio fell below Fitch's

6  Triple A revised benchmark.  Fitch would then allow the municipal bond

7  insurance company approximately thirty (30) days to execute a risk mitigation

8  strategy or to raise capital so as to meet Fitch's revised Triple A criteria.  A failure

9  by the municipal bonds insurance company to meet the new Fitch rating standards

10  would result in a downgrade of the insurance company's Triple A rating.

11      C.    **FGIC's Response to LACMA Regarding Fitch's Ratings Review**

12          **Announcement**

13       24.    In response to Fitch's November 5, 2007 press release, on or about

14  November 6 and 7, 2007, FGIC made the following statements, misrepresentations

15  and omissions, and took actions as follows to assure LACMA that FGIC would

16  take all steps necessary to maintain its Triple A rating:

17          (a)  On or about November 6, 2007, in response to

18          Fitch's press release on November 5, representatives of

19          FGIC made representations to the employees of

20          Citigroup, LACMA's agent and underwriter for the 2007

21          Bonds, in connection with developing language for the

22          November 6, 2007 Supplement to Official Statement.  At

23          the time the FGIC representatives told the Citigroup

24          representatives that FGIC understood the importance of

25          FGIC's Triple A rating for the municipal bond insurance

26          contract and LACMA's offering and sale of the 2007

27          Bonds and that FGIC would take the steps necessary to

28          preserve its Triple A rating.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    (b)  On November 6, 2007, FGIC issued its own press

2    release entitled "FGIC Comments on Fitch Review" for

3    the benefit of LACMA and other FGIC policyholders

4    and customers.  FGIC provided LACMA a copy of the

5    FGIC's press release on November 6, 2007.  In its press

6    release, FGIC underscored the importance of its Triple A

7    rating to its municipal bond business and municipal bond

8    insurance policyholders, stated it would work with Fitch

9    in the ratings review process, and that its shareholders

10   would take the actions necessary to preserve its Triple A

11   rating.

12   (c)  On or about November 6, 2007, FGIC asked

13   LACMA to insert additional information as a

14   "Supplement to Official Statement" for the 2007 Bonds.

15   The Official Statement is an offering prospectus for the

16   sale to the public of the 2007 Bonds.  In the

17   supplemental text, FGIC stated to LACMA and the

18   potential purchasers of the 2007 Bonds the contents of

19   the FGIC press release, gave assurances that it would

20   work diligently with Fitch in the rating process to

21   preserve FGIC's Triple A rating, and stated that the

22   company and its shareholders would take the actions

23   necessary to preserve its Triple A rating.

24   (d)  On or about November 7, 2007, in response to

25   LACMA's request, a Citigroup employee called FGIC

26   Director Howard Cure to inquire about the FGIC press

27   release of November 6.  During this telephone call, Mr.

28   Cure told the Citigroup employee working with LACMA

- 9 -

1    on the 2007 Bond offering words to the effect that

2    everything will be fine with FGIC's financial position

3    and that FGIC would do everything necessary to

4    maintain its Triple A rating with Fitch and the other

5    rating agencies.  The Citigroup employee asked Mr. Cure

6    to relate that information and make those representations

7    directly to LACMA to provide LACMA with the

8    assurances it was seeking.

9    (e)  On or about November 7, 2007, Mr. Cure of FGIC

10   called LACMA Chief Financial Officer ("CFO") Ann

11   Rowland about FGIC's November 6 press release.

12   During this telephone call, Mr. Cure told Ms. Rowland

13   words to the effect that everything will be fine with

14   regard to FGIC's financial position *vis a vis* Fitch and

15   the rating agencies, that FGIC would do whatever was

16   required to maintain its Triple A rating, and that FGIC

17   was highly motivated to retain its Triple A rating

18   because its ability to write municipal bond insurance

19   policies depended on its having a Triple A rating.

20   **D.    The Sale of the 2007 Bonds and FGIC's Rating Downgrades**

21       25.    The sale of the 2007 Bonds was consummated on November 9, 2007

22   when LACMA funded the bonds.  LACMA paid approximately the $6.75 million

23   premium to FGIC for the municipal bond insurance policy on November 9, 2007

24   when the sale of the 2007 Bonds was funded, recognizing that, if it waited, the

25   premium would be increased by$2.0 million.

26       26.    On or about December 17, 2007, Fitch issued a press release

27   announcing it had placed FGIC's "AAA" Insurer Financial Strength ("IFS") on

28   Rating Watch Negative.  Fitch's announcement meant that FGIC's capital

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  adequacy fell below Fitch's guidelines for an "AAA" IFS rating.  Fitch stated that

2  it was allowing FGIC four to six weeks to obtain more capital or engage in

3  acceptable risk mitigation efforts such as reinsurance.  Fitch stated that, if FGIC

4  were unable to meet the Fitch's guidelines within that time period, Fitch would

5  downgrade FGIC's Triple A rating.  On the same day, FGIC issued a press release

6  stating that it had developed a plan for the enhancement of its capital position, that

7  FGIC's investors had voiced their support of the plan and that FGIC remained

8  committed to maintaining FGIC's Triple A rating.

9        27.    Because FGIC failed to implement any plan to increase its capital

10  position, Fitch downgraded FGIC's rating on or about January 30, 2008 from

11  "AAA" to "AA."  On or about January 31, 2008, S & P also downgraded FGIC

12  from "AAA" to "AA."  Both S & P and Fitch placed FGIC on "Credit Watch with

13  developing implications," meaning that further downgrades were reasonably

14  possible.  On or about March 28, 2008, S & P lowered its IFS rating on FGIC six

15  levels to "BB" from "A."  Shortly before this rating downgrade, FGIC's principal

16  owner and shareholder, the PMI Group, announced that it would not contribute

17  any capital to FGIC as part of any recapitalization plan.  At or about the same

18  time, FGIC announced a suspension of new business writings.

19        28.    Once FGIC was downgraded formally on January 30, 2008, by the

20  rating agencies from Triple A to Double A, the municipal bond insurance policy

21  issued by FGIC to LACMA for the 2007 Bonds became useless for its intended

22  purpose of supporting the liquidity of the 2007 Bonds.  The continued downgrade

23  of FGIC to speculative and low grade ratings reinforced the total lack of value of

24  FGIC's municipal bond insurance policy.

25

26

27

28

- 11 -

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

E.    **Unjust Enrichment and Constructive Trust**

29.    On or about November 9, 2007, LACMA paid an insurance policy premium to FGIC in the amount of approximately $6.75 million for municipal bond insurance for the 2007 Bond Offering.  This premium payment was based on FGIC's representations that it would maintain a Triple A financial strength rating in the face of the rating review commenced by Fitch on or before November 5, 2007.  FGIC failed to maintain the Triple A rating.  Within about thirty (30) days Fitch placed FGIC  on ratings  watch and within about thirty (30) days thereafter, FGIC was downgraded and lost its Triple A rating.  FGIC's loss of its Triple A rating rendered the municipal bond insurance policy FGIC issued for the 2007 Bonds as useless for its intended commercial purpose of supporting liquidity for the bonds.

30.    By virtue of FGIC's misrepresentations, misstatements and omissions, FGIC received from LACMA a premium payment of approximately $6.75 million for an insurance policy which soon became useless for its commercial purpose.  Consequently, FGIC holds in constructive trust the $6.75 million premium and has been unjustly enriched by receiving a $6.75 million payment for a municipal bond insurance policy which had no commercial value immediately after its issuance.  LACMA seeks restitution of the entire $6.75 million premium payment by order of this Court.

## FIRST CAUSE OF ACTION

### Fraud

31.    The Plaintiff alleges this cause of action against the Defendant FGIC and incorporates each allegation of Paragraphs 1 through 30 hereof as if fully set forth herein.

32.    On or about November 6, 2007, in direct response to the press release Fitch issued on November 5, 2007, FDIC representatives Isabella Guerra and Howard Cure made the following misrepresentations to LACMA, and LACMA's

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  agents employed by LACMA's underwriter Citigroup, in a telephone call with a

2  Citigroup employee and counsel for Citigroup handling the LACMA 2007 Bond

3  offering. Isabella Guerra and Howard Cure also made the same misrepresentations

4  in FDIC's press release of November 6, 2007, and the November 6, 2007

5  Supplement to the Official Statement for the sale of the bonds.  These

6  misrepresentations were as follows:

       (a)  FGIC would work in good faith with Fitch to
maintain its Triple A rating;

       (b)  FGIC had developed a capital enhancement and risk
mitigation plan that would be acceptable to Fitch; and

       (c)  FGIC would take the actions necessary with Fitch
and the rating agencies to preserve its Triple A rating.

33.    On or about November 7, 2007, in specific response to a request from
LACMA and Citigroup for assurances that FGIC would take all the necessary
steps to preserve its Triple A rating, FGIC representative Howard Cure made the
following misrepresentations during separate telephone calls with the Citigroup
employee handling the sale of LACMA's 2007 Bonds and LACMA CFO Ann
Rowland:

       (a)  Everything would be fine with regard to FGIC's
financial position with Fitch concerning FGIC's Triple A
rating;

       (b)  FGIC would do whatever was required to maintain
its Triple A rating with Fitch; and

       (c)  FGIC would do the mitigation necessary to maintain
its Triple A rating with Fitch because it was FGIC's
business to write municipal bond insurance policies and
could not do so without a Triple A rating.

BLECHER &amp; COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    The purpose of the November 7, 2007, telephone calls with FGIC's Howard
2    Cure was for FGIC to provide assurances to LACMA that FGIC would maintain
3    its Triple A rating. FGIC's Triple A rating was required to preserve the
4    commercial purpose of FGIC's insurance policy so the 2007 Bond Offering could
5    proceed.

6    34.    FGIC, and representatives of FGIC, including Howard Cure, knew
7    that the above-referenced statements and omissions were false when they made
8    them, or acted with reckless disregard for the facts relating to the truthfulness of
9    such statements. FGIC, and the representatives of FGIC, including Howard Cure,
10   knew that the above referenced false statements and omissions would be material
11   to LACMA's decision to go forward with the sale of the 2007 Bonds and to pay
12   the approximately $6.75 million premium payment for the bond insurance policy
13   FGIC was selling to LACMA. During the time Howard Cure made the
14   misrepresentations to LACMA and LACMA's agent Citigroup on or about
15   November 6, and 7, 2007, Mr. Cure on several occasions reminded LACMA that,
16   if it did not close the bond offering by November 15, 2007, then FGIC would
17   charge an additional $2.0 million for its premium. FGIC at that time pressured
18   LACMA to close the 2007 Bond sale because FGIC desperately needed the cash
19   from the $6.75 million insurance premium payment.

20   35.    FGIC through its own internal financial analysis in existence by
21   November 1, 2007 knew that its exposure to sub prime mortgage backed securities
22   was such that its capital position and capital reserves would be impacted in a
23   severe way. FGIC knew that a downgrade from Triple A was probable and likely,
24   but FGIC failed to disclose this fact to LACMA. FGIC also failed to make its
25   internal financial analysis available to LACMA in early November in connection
26   with LACMA's decision to go forward with the 2007 Bond Offering and to pay
27   the $6.75 million insurance premium. Also, FGIC had no capital enhancement
28   plan in place in early November 2007 and had no commitment from its

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  shareholders to contribute the substantial additional capital it would take to

2  maintain its Triple A rating.  FGIC failed to disclose to, and indeed concealed

3  these facts from, LACMA.

4      36.    The above-referenced misrepresentations and omissions of FGIC and

5  FGIC's Howard Cure were material to LACMA's decision to go forward with the

6  sale of the 2007 Bonds at that time and to pay the approximately $6.75 million

7  premium payment for the municipal bond insurance FGIC was offering.  The

8  misrepresentations of FGIC and its representative Howard Cure were false when

9  made and were intended to induce, and did reasonably induce, the reliance of

10  LACMA to go forward with the sale of the 2007 Bonds and pay the $6.75 million

11  insurance policy premium.  LACMA had no way of knowing that FGIC's true

12  financial condition was such that it would not have the financial strength to

13  maintain its Triple A rating in light of FGIC's exposure to the sub prime mortgage

14  backed securities market.

15      37.    In reliance on FGIC's misrepresentations and those of its

16  representatives such as Howard Cure, LACMA did in fact go forward with the sale

17  of the 2007 Bonds and paid the approximately $6.75 million premium to FGIC for

18  the municipal bond insurance policy.  Until LACMA funded the 2007 Bond

19  Offering on November 9, 2007, it could have cancelled the sale of the bonds and

20  rejected payment to FGIC of the $6.75 million insurance premium payment.

21      38.    As a direct and proximate result of the Defendants'

22  misrepresentations and omissions, LACMA has been damaged in an amount in not

23  less than $10 million and as much as $32 million.

24      39.    The acts and misrepresentations alleged in this cause of action

25  constitute any or all of the following:

26          (a)  Despicable conduct, carried on maliciously, with the

27          intention of thereby injuring Plaintiff;

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 15 -

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    (b)  Oppression, subjecting the Plaintiff to cruel and

2    unusual hardship in conscious disregard Plaintiff's

3    rights; and

4    (c)  Fraudulent conduct with the intention on the part of

5    the Defendant of thereby depriving the Plaintiff of its

6    property or legal rights, or otherwise causing Plaintiff

7    injury.

8    By virtue of such conduct by FGIC, the Plaintiff is entitled to recover from

9    the Defendant FGIC punitive damages in an amount to be determined at trial.

10    **SECOND CAUSE OF ACTION**

11    **Negligent Misrepresentation**

12    40.    Plaintiff alleges this cause of action against Defendant FGIC and

13    incorporates paragraphs 1 through 38 as if fully set forth herein.  Plaintiff pleads

14    this cause of action as an alternative to the First Cause of Action.

15    41.    The Defendant FGIC, when it made the representations to LACMA,

16    had no reasonable grounds for believing that such representations were true,

17    and/or failed to exercise that degree of care or reasonableness of inquiry that

18    ordinarily prudent persons in like positions would have used in similar

19    circumstances.

20    42.    As a direct and proximate result of the Defendant FGIC's

21    misrepresentations and omissions, Plaintiff has been damaged in an amount in of

22    not less than $10 million and as much as $32 million.

23    **THIRD CAUSE OF ACTION**

24    **Breach of Contract**

25    43.    Plaintiff alleges this cause of action against Defendant FGIC and

26    incorporates paragraphs 1 through 28 as if fully set forth herein.

27    44.    On October 26, 2007, FGIC  presented to LACMA a commitment

28    memorandum to provide municipal bond insurance for the 2007 Bonds.  The

1  commitment memorandum represented the results of the negotiations between
2  LACMA and FGIC for the insurance policy and included FGIC's promise that it
3  intended to maintain its Triple A rating.  The commitment memorandum contained
4  the terms of the contract for insurance and attached specimen documents for the
5  2007 Bonds including the insurance policy, the surety bonds, and related
6  materials.  The memorandum also set forth certain text that FGIC required to be
7  placed in the bond offering prospectus, known as the "Official Statement,"
8  including a Statement of Insurance and a promise that FGIC would maintain its
9  Triple A credit rating.

10       45.    FGIC understood that LACMA was purchasing the insurance contract
11  because FGIC had a Triple A rating and that FGIC's Triple A rating was necessary
12  to market the bonds and maintain liquidity after the sale of the bonds.  LACMA
13  bargained for, and obtained, and expected that FGIC would have, and would
14  maintain, a Triple A rating to support the insurance policy it was selling to
15  LACMA for the 2007 Bonds.

16       46.    FGIC's promise to possess and maintain a Triple A rating was
17  contained in the text of the Official Statement for the sale of the 2007 Bonds.
18  FGIC's promise to maintain its Triple A rating was also contained in the
19  Supplement to Official Statement dated November 6, 2007 in which FGIC
20  provided a further promise to maintain its Triple A rating.  The Supplement to
21  Official Statement appeared on or about November 6 or 7, 2007.

22       47.    FGIC did in fact issue a municipal bond insurance policy effective
23  November 9, 2007 to insure for the Bondholders the timely payment by LACMA
24  of principal and interest payments on the 2007 Bonds.

25       48.    The commitment memorandum, the Official Statement, the
26  Supplement to the Official Statement, the Municipal Bond Insurance Policy and
27  the surety bonds all constitute the contract for insurance, and sometimes
28  hereinafter will be referred to as "the Insurance Contract."  FGIC breached the

1  Insurance Contract by failing to provide municipal bond insurance backed up by

2  FGIC's Triple A financial strength rating. FGIC promised as part of the Insurance

3  Contract to maintain its Triple A financial strength rating. Within about 30 days

4  after the November 9, 2007 effective date, Fitch placed FGIC on Rating Review

5  Watch Negative, effectively stripping FGIC of its Triple A financial strength

6  rating necessary to make the insurance policy viable and acceptable to

7  Bondholders. By the end of January 2007, Fitch had downgraded FGIC's rating

8  from Triple A, thereby making the insurance policy useless for its intended

9  commercial purpose. By the end of March 2007, the rating agencies had

10  downgraded FGIC's financial strength rating to the speculative and low grade

11  levels, which even further devalued the insurance policy and required LACMA to

12  restructure and reissue the 2007 Bonds.

13       49.    FGIC's failure to maintain its Triple A rating constituted a material

14  breach of the Insurance Contract. LACMA has performed, and continues to

15  perform, all the terms of the Insurance Contract it is required to perform. In

16  particular, LACMA paid the entire $6.75 million premium payment on November

17  9, 2007 upon the closing of the 2007 Bond Offering as required by the Insurance

18  Contract.

19       50.    As a direct and proximate result of FGIC's breach of the Insurance

20  Contract, Plaintiff has been damaged in an amount not less than $10 million and as

21  much as $32 million.

## FOURTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

24       51.    Plaintiff alleges this cause of action against Defendant FGIC and

25  incorporates paragraphs 1 through 28 and 44 through 50 as if fully set forth herein.

26       52.    Defendant FGIC, at all material times, had a duty to act fairly and in

27  good faith with respect to LACMA in carrying out its responsibilities and

28  contractual obligations under the Insurance Contract. Pursuant to the Insurance

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Contract, FGIC had an obligation to maintain its Triple A financial strength rating. The Insurance Contract is subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other party to obtain the full benefits of the Insurance Contract.

53.    Defendant has breached the implied covenant of good faith and fair dealing by failing to maintain its Triple A financial strength rating.  Alternatively, FGIC has breached the implied covenant of good faith and fair dealing by issuing an insurance policy under the Insurance Contract which it reasonably knew would not fit the economic and commercial purpose required to support the 2007 Bonds.

54.    Defendant FGIC has breached its obligations to act fairly and in good faith towards LACMA by, among other things, unreasonably, maliciously, fraudulently, oppressively and despicably acting, or failing to act, follows:

(a)  By failing to maintain its Triple A rating for financial strength; and

(b)  By issuing an insurance policy under the Insurance Contract which it reasonably knew would not fit the economic and commercial purpose required to support the 2007 Bonds.

55.    As a direct and proximate result of FGIC's breach of the implied covenant of good faith and fair dealing, LACMA has been damaged in an amount of at least $10 million and as much as $32 million.

### FIFTH CAUSE OF ACTION

### Unfair Competition (Bus. & Prof. Code Section 17200)

56.    Plaintiffs alleges this cause of action against Defendant FGIC and incorporates all of the paragraphs of the Complaint, except paragraphs 38, 39, 42, 50 and 55, as if fully set forth herein.

57.    This cause of action is to secure for LACMA restitution and return of its $6.75 million premium payment for the Insurance Contract it purchased from

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

FGIC for the 2007 Bond Offering.  The Insurance Contract LACMA purchased from FGIC was useless for the economic and commercial purpose for which it was purchased given FGIC's failure to maintain its Triple A rating.  LACMA was a consumer and purchaser of FGIC financial products, including the Insurance Contract.

58.    In or about October and November 2007, FGIC engaged in a deliberate plan of deceptive business practices and unfair competition by writing insurance policies, including the Insurance Contract for LACMA's 2007 Bond Offering, knowing that the insurance policies would become worthless or not commercially suited for the purpose for which FGIC sold the policies given that FGIC would not be able to maintain its Triple A financial strength rating with the rating agencies.  In particular, FGIC knew, or reasonably should have known, that it would not be able to maintain its Triple A financial strength rating such that any municipal bond insurance policies it might write would be useless for the financial purpose for which they were intended.

59.    FGIC's anticompetitive plan and deceptive marketing program in the face of its ratings review by Fitch consists of several elements, not all of which are presently known to Plaintiff, but which include engaging in the acts, practices, and violations of law alleged in the First through Fourth Causes of Action alleged herein and described more particularly therein and incorporated herein by reference.  Such anticompetitive conduct and deceptive business practices constitute unfair competition and violates Bus & Prof Code Section 17200.  Plaintiff LACMA seeks restitution for, and a return of, its approximately $6.75 million premium payment it made to FGIC to purchase the Insurance Contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant it the following relief:

1.    That judgment be entered in favor of the Plaintiff as to the First, Second, Third, and Fourth Causes of Action for compensatory damages against

1  Defendant FGIC for all damages sustained as the result of the Defendant's

2  wrongdoing in an amount to be proven at trial, including interest thereon;

3      2.     That judgment be entered in favor of Plaintiff as to the First Cause of

4  Action for punitive damages against Defendant FGIC for the Defendant's

5  wrongful conduct in an amount to be proven at trial;

6      3.     That a judgment of restitution be entered against FGIC and in favor of

7  LACMA for the Fifth Cause of Action for the return of the $6.75 million

8  insurance policy premium payment;

9      4.     That a judgment of constructive trust and restitution be entered

10  against FGIC and in favor of LACMA for repayment, refund and return to

11  LACMA of the $6.75 million insurance policy premium payment to prevent

12  FGIC's unjust enrichment;

13      5.     That Plaintiff be awarded its reasonable costs and expenses incurred

14  in this action, including attorneys fees and expert fees; and

15      6.     That Plaintiff be awarded such other and further relief as this Court

16  may deem just and proper.

Dated:   November 4, 2008          BLECHER & COLLINS, P.C.
                                   MAXWELL M. BLECHER
                                   RALPH C. HOFER


                                   By _____
                                         Ralph C. Hofer
                                   Attorneys for Plaintiff MUSEUM
                                   ASSOCIATES, dba LOS ANGELES
                                   COUNTY MUSEUM OF ART

37504.1

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 21 -

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury pursuant to Federal Rules of Civil Procedure, Rule 38(b) (28 U.S.C. Rule 38) and Local Rule 38-1.

Dated:   November 4, 2008

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
RALPH C. HOFER

By _____
Ralph C. Hofer
Attorneys for Plaintiff MUSEUM
ASSOCIATES, dba LOS ANGELES
COUNTY MUSEUM OF ART

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW